October 21.
JUDGE CARR
delivered his opinion.
Tne Plaintiffs sued the Defendant on an account for goods, wares and merchandize, &c. Plea, non-assumpsit. By consent, the case was referred to arbitrators. They returned an award in favor of the Plaintiffs, for $203 40, which for reasons appearing to the Court, was set aside, and by consent, the cause was again referred to the same arbitrators, who again made an award in favor of the Plaintiffs $174 75, which, on motion of the Defendant’s Attorney, was again set aside by the Court, and on his further motion, the order of reference was set aside, to which order the Plaintiffs objected and the cause was ordered to be continued, and leave given to the Defendant to file a special plea, provided it was filed during the Term; and at the same Term, the Defendant pleaded lour pleas: 1st. Non-Assumpsit; 2d. A set-off; 3d. The Act of Limitations of Merchants’ accounts; 4th. The Act of Limitations generally.
At the next Teim, the Plaintiffs objected to the third special plea of the Defendant, which objection being over-ruled, the Plaintiffs replied generally to the special pleas, and issue was joined. At a subsequent Term, a Jury was sworn generally, and found a general verdict for the Defendant, and Judgment, for which the appeal was taken.
Many points were raised in the argument, but the case seemed to be considered as resting principally on two. 1. The correctness of the Court in setting aside the second award, and the order of reference. 2. In over-ruling the Plaintiff’s objection to the third special plea.
Reasons for setting aside awards, are either for illegality or injustice, apparent on their face, or for misbehaviour in the arbitrators. With respect to the first, Courts deal *liberally and favourably with awards, but they are much more strict, where the question of misbe-haviour is raised. On the question of mis-behaviour, I consider Courts of Law (in awards made, as here, by rule of Court,) to have the same power as Courts of Equity. On first looking into this subject, I doubted with respect to this power. In Wills v. Maccarmick, 2 Wils. Rep. 148, and 1st. Wm’s. Saund. 327, note (b.) it is laid down, that at Common Law, no award, whether the submission was by bond, other writing, or by parol, could be set aside for misbehaviour of the arbitrators, in any action, either upon the bond of submission, or the award : This could only be effected by a resort to Equity. Prior to the Statute of 9th and 10th Wm. 3, ch. 15, the Courts had permitted parties who had suits depending, to submit them to arbitration, and to make such submission a rule of Court, and the award when made, was considered a part of the rule; and though such award was not entered as the Judgment of the Court, the refusal of a party to execute it, was treated as a contempt of *787 tne rule, and process issued against him, to show cause why he should not be punished for such contempt. For cause, he might show any thing on the face of the award which vitiated it, or he might go into evidence to show any misbehaviour, partiality, or corruption in the arbitrators; and success in either of these attempts, cleared his contempt. This was a striking difference between submissions by rule of Court, and otherwise. The utility of these references by rule of Court being found, the before-mentioned Statute was enacted, enabling persons, who had no existing suit in Court, to agree that their submission of their controversy to the award or umpirage of any person or persons, should be made a rule of Court, and to insert such agreement in the submission, or the condition of the bond or promise, whereby they oblige themselves to submit to the award or umpirage, which being proved in Court shall be entered of record, and a rule shall thereupon be made by the Court, that the parties '“'shall submit to, and be concluded by the arbitration or umpirage, which shall be made concerning them by the arbitrators or umpire, pursuant to such submission; and the party disobeying such arbitration or umpirage, was subject to process of contempt. Our Statute concerning Awards, is almost a literal transcript from this. The only material difference between them is, that under our Statute, the award, when returned, “may be entered up as the Judgment or Decree of the Court:” by the British Statute, it cannot. It has been decided in England, that their Act intended to put cases, not depending in Court, on the same footing with those that were; and both there and here, the Courts have construed the Statute to extend to those cases only, which were submitted by bond or other writing, where there was no suit depending, not to cases referred by rule of Court between suitors. The case before ns is one of this last class, and therefore, not governed by the Statute. If it had been so governed, there could have been no doubt about the Court’s having the power to set aside the award; for, the Statute expressly enables them to do so “ for corruption, or other undue means, or where there, shall have been evident partiality, or misbehaviour in the arbitrators or umpires, or any of them.” It was clear, that in cases referred (not under the Statute) by rule of Court, the Court would not xmnish a party for contempt, if he could show any error apparent on the face of the award, or by evidence, could establish misbehaviour in the arbitrators; but, my doubt was, whether the Court could act upon the award, and annul it. This doubt has been removed by further examination. As the Statute meant to place the parties (who, having no suit in Court, chose to submit their controversies to arbitration, and have such submission made a rule of Court,) on the same fooling with those who, having suits in Court, referred them by entry on the Record, the fact that the Statute, in the cases governed by it, gives the Court express power to set aside awards, furnishes prima facie evidence, that the Legislature “considered the Courts as having such power in cases not under the Statute. The very fact too, that the parties have given the Court a superintendence of the award, would seem to vest them with power to set it aside; and such I find tne decision, and the reasoning in Rogers v. Dallimore, 6 Taunt. 111, 1 Com. L. Rep. 329. In that case, the order was made by rule of Court, in a case depending. The award was returned, and after the time, given by the Statute for making objections to the award had passed, a moiion was made to set aside the award, on proof that the arbitrator had made a numerical mistake, which he was himself anxious to correct, having put down the sum awarded at 411. instead of 611. The motion was objected to, on the ground that the Court had no power to set aside the award. Gibbs, Ch. J. who delivered the opinion, says, “It has been urged for the Defendant, that the Court has no jurisdiction to set aside awards, except under the Statute; and that if the Plaintiff applies under the Statute, he is out of time. We think otherwise, and that the rule of Court which gives superintendence to the arbitrator, gives also to the Court a superintendence over the award, and that the Court have that authority in the present case.”
The power being with the Court, we must enquire whether in this case it has been correctly exercised. The evidence on which the Court acted has not been brought before us in a regular way, so as to give us a distinct view of the whole ground they acted on. The Record states, that “on the motion of the Defendant, and reasons .appearing to the Court, and from the testimony of the said Henry,” (one of the arbitrators,) the Court set aside the award, and it was contended strongly that as we could not see those reasons appearing to the Court, which are exclusive of the evidence of Henry, we could not pass upon their act. If we considered it in this way, I do not think the Plaintiff would have any right to complain; for, as he objected to the opinion of the Court, it was his business *to bring the point before us in such a shape, as to show that we have the whole evidence on which the Court below proceeded. I will, however, examine the evidence of Henry, and taking it as the whole, consider whether the Court did right in setting aside the award. The facts are these: The arbitrators met. on the day appointed. Pence produced an affidavit of the absence of a material witness, which rendered it improper, in the opinion of the arbitrators, to proceed: they, therefore, gave a continuance, but to what, or whether to any day, does not appear. On the same day of their first meeting, the arbitrators decided that they would not arbitrate the case at all, and would have nothing more to do with it, and drew up and signed a paper declaring their decision, the contents of which they communicated to the parties. After-wards Henry, (one of the arbitrators,) being pressed by the Plaintiff to make another effort to decide the case, authorised the Plaintiff (for himself, but whether the *788 other arbitrator was consulted he does not know,) to give the notice to the Defendant, which is annexed to the award. On the day stated in the notice, the arbitrators and parties met, when Pence said, that after their decision to have nothing todo with the case, he did not consider himself bound to submit it further to them; that he relied on that decision, which he called on them to return to Court, and left them, saying that they had no power to proceed. After he left them, they took up the case, and made their award on the evidence of the Plaintiff alone. The account produced by Pence, at their first meeting, exceeded that of the Plaintiff, and he said at the second meeting, that he had a witness residing in Harrisonburg, (where the award was made,) who could establish part of his set-off, but no witness for him was examined. Such are the facts.
In Burton v. Knight, 2 Vern. 514, it was decided, that if arbitrators hold private meetings with one of the parties, and admit him to be heard, to induce an alteration of their award, this is such gross partiality, as to induce a Court of *Equity to set aside the award. In Harris v. Mitchell, 2 Vern. 485, two arbitrators were named, with power to choose an umpire, if they could nor agree. They disagreed,, and not being able to agree on an umpire, threw up cross and pile for choice. The umpire so appointed, made an award, which was set aside for the conduct of the arbitrators in appointing him. So, where the arbitrators promised to hear witnesses, but afterwards made their award without hearing them, the award was set aside. 2 Vern. 251. In Smith v. Cory-ton, the arbitrator promised not to make his award until Smith, who was not well, should come abroad. Lord Nottingham inclined for that reason to set it aside, but the matter was compromised. Ibid. In Atkinson v. Abraham, 1 Bos. & Pul. 175, motion for rule to show cause why an award should not be set aside, on this ground, that after the evidence was closed on both sides, and the Plaintiff’s Attorney gone, one of the Defendant’s witnesses was re-examined, and gave a testimony different from that which he had given before and by which the arbitrator confessed that his judgment was influenced: Rule denied, but Eyre, Ch. J. said, that if it had appeared there was any surprise in it, that the second examination had been brought about through the management of the Defendant’s Attorney, that might be a good objection. In Walker v. Frobisher, 6 Ves. 70, the arbitrator gave notice to the parties that he should hear no more evidence: afterwards three persons came in, and the arbitrator examined them. On a Bill to set aside the award for this reason, Eord Eldon said, “I am well assured that the arbitrator is a most respectable man, but he has been surprised into a conduct, which upon general principles must be fatal to the award. He had examined different witnesses, at different times, in the presence of the parties. He recommended to them not to produce any more witnesses. To that recommendation they accede; and in effect say, “upon the view of what is disclosed to you, do what is right between us.” After this he hears *tbree other persons, and he admits he took minutes of what was said. It did not pass as mere conversation. It does not appear, that he afterwards held any communication with the other party; or disclosed what passed to him: but the arbitrator swears, it had no effect on his award. I believe him. He is a most respectable man. But I cannot, from respect to any man, do that which I cannot reconcile to general principles. A Judge must not take upon himself to say, whether evidence improperly admitted, had or had not an effect on his mind. The award may have done perfect justice; but upon general principles, it cannot be supported.” See also, Chicot v. Lequesne, 2 Ves. sen. 316, the strong remarks of Eord Hardwicke on this subject.
These are some of the cases on the subject. They show that strict impartiality must be observed, and that even where the Court thinks the arbitrators have been free from intentional wrong, they sometimes set aside their award, because their conduct has been such as, on general principles, cannot be supported. In the case before us it was strongly contended, that the arbitrators having declined to act upon the case, and executed a writing expressing that determination, which they communicated to the parties, had thereby divested themselves of the character and authority of arbitrators, and that the parties having assented to this, the arbitrators could not afterwards act without a re-appointment. I am by no means prepared to say, that there is nothing in this point, though I shall pass it over without further notice. The aspect of the case which strikes me as strongest against the award, is the appearance of partiality which is exhibited. After declining to act, and informing both parties of it, the Plaintiff goes to one of the arbitrators, has a private conversation with him, presses him to change his decision, and by what arguments, or means, we know not, prevails on him to agree to act. How the other arbitrator was proceeded with, we do not know. Now this was not the fair, and open course. As both parties had been apprised of the refusal to act, and had received the resignation of the arbitrators, both ought to *have been heard before they determined to change their course. The Plaintiff, if he wished to urge the parties to hear the cause ought to have given the Defendant an opportunity of attending, and objecting, if he thought proper. Indeed, after a man is chosen arbitrator, he ought not to have a word of private, and ex parte conversation on the subject, with either of the parties: it casts suspicion on him, and as Eord Eldon observes, a Judge cannot take upon himself to say that such a conversation had no influence on his mind. Were not the circumstances well calculated to awaken suspicion of foul play in the Defendant’s mind? He is told by the arbitrators that they will have nothing further to do with the case. After this, he finds that without any communication with him, by the per *789 suasions of his opponent, they have changed their determination. He receives a notice to meet, drawn, as we must conclude by the Plaintiff, in the name of the arbitrators; for, we are told that Henry, author-ised him to give a notice of the time and place. Can we feel surprised, that under these circumstances, he felt himself unsafe in their hands, and refused to submit his case, protesting against their power to act farther? And ought they, when they found that their power was denied, and that the case would not be submitted to them, to have gone on, and made their award? And that wholly on ex parte evidence, when they saw set-offs exhibited, exceeding the claim of the Plaintiff, and knew that the Defendant had witnesses to be examined? It seems to me, that in such a situation of things, the straight and fair course was, to have reported the facts to the Court, and let it decide whether their power continued, and whether in the existing state of feelings of one parly at least, it was most likely to produce a just result, to send the case back to them; and it really seems strange, that they who, (before any objection was made to their proceeding,) had resolved to have nothing to do with the matter, should have been so changed by the representations of one party, as to persist to try the cause in spite of the oppositions of the other. I would by no means be understood *to charge the arbitrators with actual partiality, but I do think that this conduct was such, as on general principles, furnishes a justification of the Court in setting aside their award. I think the Court did right too, in setting aside the order of reference. It was a matter perfectly within their power, (it seems to me,) and under the circumstances, sound discretion dictated it, for nothing satisfactory could be expected after wnat had happened.
With respect to the power of a party to revoke the authority of the arbitrators at any time before the award made, that question is not meant to be touched by this opinion. The last objection is, with respect to the conduct of the Court in admitting the third special plea. It is admitted that there would have been no error in receiving an informal plea, to which the Plaintiff made no objection, because the Plaintiff might either demur, or take issue. If he did the latter, a general verdict, (as there was here,) would cure the informality. But the Plaintiff here, did object. The question seems to be, to which plea? The Record says, the third special plea. There were four pleas; one general, three special. The Counsel for the Plaintiff, contends that the objection was to the pica of non-assumpsit within one year, because this is the third plea, and evidently a bad plea, while the plea of non-assumpsit within five years, is the fourth plea, and is well pleaded. But, the plea of non-as-sumpsit within one year, though the third plea, is, not the third special plea, but the second only. The third special plea is non-assumpsit within five j'ears, and this, though well pleaded, is the plea which the Record says was objected to. There is no other description of the plea in the objection, than the number, and that certainly leads us to the last plea. I cannot therefore say, that the Court erred in overruling the objection, and upon the whole, think the Judgment must be affirmed.
All the other Judges concurred, and the Judgment was affirmed.*

 .Kroon Green, absent.